FILED

SEP - 7 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


**TATTOO ART, INC.,**

     **Plaintiff,**

**v.**                                         **Civil Action No. 2:10cv323**

**TAT INTERNATIONAL, LLC., et. al.,**

     **Defendants,**

**and**

**TatStore, LLC, et. al.,**

     **Third-Parties.**


## OPINION AND ORDER

This matter is before the Court following a Motion for an Order to Show Cause. On April 19, 2012, Plaintiff Tattoo Art, Inc. filed a Motion for an Order to Show Cause, claiming that Defendants Tat International, LLC, and Kirk Knapp were violating this Court's June 29, 2011 permanent injunction order (ECF Nos. 77 & 84) as well as the Court's May 18, 2011 Order (ECF No. 66) directing that Defendants maintain and preserve business records. A hearing on this motion was held June 7, 2012. Following the hearing, the Court directed counsel to meet and engage in good faith negotiations to resolve the issues addressed at oral argument. Unfortunately, the parties were

unable to come to an agreement and were ordered to file position papers outlining the appropriate remedy to be ordered by this Court. Based on the reasoning set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Show Cause and hereby **FINDS** Defendants and Third Parties to be in contempt of the Court's May 18, 2011 and June 29, 2011 Orders.

## I. FACTUAL AND PROCEDURAL HISTORY

This Court previously recounted the procedural history of the instant matter in detail in its February 28, 2011 Opinion and Order, see ECF No. 48 at 6-8, and its Findings, see ECF No. 77 at 2-4, and will therefore only briefly reiterate that history herein. On July 2, 2010, Plaintiff filed a Complaint against Defendants for copyright infringement and breach of a licensing agreement related to Plaintiff's temporary tattoo designs. ECF No. 1. In February of 2011, this Court granted Plaintiff's Motion for Partial Summary Judgment as to liability against the Defendants, leaving only the issue of damages and Plaintiff's request for permanent injunctive relief.[1] ECF No. 48. After a two day bench trial, on June 29, 2011, this Court

---

[1] On May 18, 2011, after the Court's Summary Judgment Opinion, but before the Court had issued its Findings on damages and injunctive relief, Magistrate Judge Douglas Miller entered an Order directing that Plaintiff return Defendants' client files produced during discovery to Defendants' counsel. ECF No. 66. However, Defendants were "ordered to maintain and preserve the original client files in the order in which they were produced to plaintiff." Id.

2

entered its Findings of Facts and Conclusions of Law and permanently enjoined Defendants from infringing upon Plaintiff's copyrighted tattoo designs or otherwise violating Plaintiff's exclusive rights by manufacturing, selling, distributing, copying, reproducing, or otherwise deriving any artwork or product from such designs. ECF No. 77 at 75. The Court also ordered that within thirty (30) days of the Court's Final Order on Plaintiff's Motion for Attorney's Fees, Defendants return to Plaintiff's counsel all infringing materials of any nature in Defendants' direct or indirect possession or control, or over which any Defendant possessed any current, future, potential or contingent ownership interest. ECF No. 77 at 76. On August 23, 2011, this Court entered a Final Order and Judgment against Defendants, awarding Plaintiff damages and attorney's fees and incorporating by reference, for purposes of appeal, its prior injunction order. ECF No. 84.

On September 21, 2011, Defendants filed a notice of appeal to the Fourth Circuit Court of Appeals, thereby staying the order to return business files. See ECF No. 88. However, Defendants continued to have an obligation to safeguard those materials so that they could comply with the Court's Final Order upon the conclusion of the appeal. ECF No. 77 at 76; see also, May 18, 2011 Order, ECF No. 66 (ordering that Defendants' maintain and preserve the original client files). On December

3

5, 2011, Tattoo Art filed in this Court a Motion to Register Judgment in the United States District Court for the Western District of Michigan, which was granted, and the parties have since been involved in garnishment proceedings in that district. ECF No. 103.

In late May of 2012, during an attempt to serve garnishment papers, Plaintiff discovered that Tat International had closed its business, though its website, TatStore.com, continued to run. The contact information on that site directed viewers to John Pehrson and TatStore, LLC (collectively, the "Third Parties"). Plaintiff ultimately discovered that On October 15, 2011, Defendants signed a Confession of Judgment in favor of Pehrson Capital Corporation, transferring all of Tat International's Assets. See ECF No. 127, Ex. 3, 4, 5; see also Show Cause Tr. (Hereinafter "Tr. ___), ECF No. 130 at 35-39. Those transferred assets were placed in a wholly owned subsidiary of Pehrson Capital Corporation, TatStore, LLC ("TatStore"). Id.

As a result of these discoveries, on April 14, 2012, Plaintiff filed a Motion to Show Cause, alleging that Defendants: 1) were violating this Court's May 18, 2011 Order, ECF No. 66, by not properly preserving business records; and 2) were violating this Court's permanent injunction order, ECF Nos. 77 & 84, by continuing to display infringing designs and by

4

improperly conveying its business records and assets. Additionally, Plaintiff served notice of the Motion to Show Cause on Third Party Defendants TatStore, LLC and John Pehrson, claiming that they had "actively aided" Defendants in violating this Court's order.

## II.  STANDARD OF REVIEW

Sanctions for civil contempt may be imposed either to enforce a court order or to compensate the other party for any losses sustained as a result of the contempt. Cromer v. Kraft Foods N. Am. Inc., 390 F.3d 812, 821 (4th Cir. 2004) (quoting In re General Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995)). To demonstrate civil contempt, Plaintiff must show the following elements by clear and convincing evidence:

> (1) The existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree and had knowledge (at least constructive knowledge) of such violations; and (4) that [the] movant suffered harm as a result.

Ashcroft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (quoting Colonial Williamsburg Found. v. Kittinger Co., 792 F. Supp. 1397, 1405-1408 (E.D. Va. 1992)).

In this case, only the third and fourth factors are in dispute as to Defendants (Mr. Knapp and Tat International). The parties agree that the Court's permanent injunction as well the

Magistrate Judge's May 18, 2011 Order are valid court decrees, and that Defendants had knowledge of those orders. Similarly, the parties agree that the above decrees were in favor of Plaintiff. Thus, with respect to Defendants, the Court is left to consider whether a violation of either Court decree occurred and whether Plaintiff suffered any harm as a result. With respect to Third Parties (Mr. Peherson and TatStore, LLC), the Court must first determine whether it has jurisdiction over them before addressing the contempt allegations lodged against them.

### III. DISCUSSION

#### A. Personal Jurisdiction over Third Parties

As an initial matter, Third Parties argue that this Court does not have personal jurisdiction over them. However, personal jurisdiction is properly extended when nonparties "with actual notice of the court's order . . . , actively aid and abet a party in violating that order." JTH Tax, Inc. v. Lee, 540 F. Supp. 2d 642, 647 (E.D. Va. 2007); see also U.S. v. Barnette, 129 F.3d 1179, 1185 (11th Cir. 1997) ("Non-parties, despite a court's initial lack of personal jurisdiction, may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order"); Reebok Int'l. Ltd. v. McLaughlin, 49 F.3d 1387, 1391-1392 (9th Cir. 1995) (noting that "the nationwide scope of an injunction carries with it the concomitant power of the court to

reach out to nonparties who knowingly violate its order"). This standard is consistent with Federal Rule of Civil Procedure 65(d) which states: "Every order granting an injunction . . . binds only the following who receive *actual notice* of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) *other persons who are in active concert or participation* with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. Pro. 65(d)(2) (emphasis added).

In this case the Court finds both requirements have been met and an assertion of personal jurisdiction over the Third Parties is appropriate. The evidence before the Court establishes by clear and convincing evidence that Pehrson not only had actual notice of the injunctive order issued by this Court, but also actively aided the Defendants in violating it by taking control of Tattoo Art's inventory. Defendant Knapp acknowledged in his testimony to the Court that Pehrson was present at the trial and knew about the Court's permanent injunction order. Tr. 46. Furthermore, Pehrson himself forthrightly testified that he was familiar with the Court's judgment, and learned about it within days of its entry. Id. at 78. Although Pehrson did not specifically state that he was aware of the injunction prior to taking control of the assets, he did mention that he tried to identify any infringing

materials, raising a strong inference that he was, in fact, fully aware of the injunction component of the Court Order.[2] Id. at 79. Therefore, this Court finds it may appropriately exercise jurisdiction over Third Party Defendants Pehrson and TatStore.

Since the first and second factors of the contempt analysis are not in dispute as to Defendants or Third Parties, the Court is now left to consider whether Defendants and Third Parties violated either of the Court's decrees and whether Plaintiff suffered any harm as a result.

**B. Transfer of Business Records and Assets**

Plaintiff first argues that Defendants and Third Parties violated both this Court's permanent injunction order and the Court's May 18, 2011 Order by improperly conveying its business records and assets from Knapp and Tattoo Art to Pehrson and TatStore.

---

[2] This Court's permanent injunction was issued on June 29, 2011 as part of the Court's Findings of Fact and Conclusions of Law. ECF No. 77. The Court incorporated this injunction into its August 23, 2011 Final Order and Judgment which dealt with attorney's fees. ECF No. 84. It was on October 15, 2011, that Pehrson asserts he took complete ownership control over Tattoo Art's inventory and assets. ECF No. 127. Thus, the Court's permanent injunction was in place months before this transfer of assets was final. Furthermore, Pehrson testified he was aware of the Court's judgment (presumably the Court's August 23, 2011 Final Order), "days" after its entry. Tr. at 78. Since the Court's Final Order was filed almost three weeks before the date Pehrson states the transfer of assets occurred on October 15, 2012, it is clear that Pehrson had actual notice of this Court's decree.

The Court's May 18, 2011 Order clearly directs that the defendants "maintain and preserve the original client files in the order in which they were produced to plaintiff." ECF No. 66. The Court's injunction permanently enjoined defendants from "manufacturing, selling, distributing, copying, reproducing, or otherwise deriving any artwork or product from [Plaintiff's copyrighted tattoo designs]." ECF No. 77 at 75. Furthermore, the Court's injunction went on to direct that "defendants deliver to plaintiff's counsel all infringing materials of any nature in defendants' direct or indirect possession or control, or over which any defendant possesses any current, future, potential or contingent ownership interest." ECF. No 77 at 76. Though this specific directive to turn over all infringing materials was stayed pending an appeal to the Fourth Circuit, Defendants had an obligation to preserve and maintain all business records and assets pursuant to both the Court's permanent injunction order and the Court's May 18, 2011 Order. ECF Nos. 66, 77, 84. Thus, Plaintiff argues that the conveyance of Tattoo Art's business records and infringing assets to a new entity, Tatstore, LLC, was a direct violation of this Court's decrees.

As noted earlier, Plaintiff must show by clear and convincing evidence: "(1) The existence of a valid decree of which the alleged contemnor had actual or constructive

9

knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree and had knowledge (at least constructive knowledge) of such violations; and (4) that [the] movant suffered harm as a result." Ashcroft, 218 F.3d at 301.   The first two prongs for civil contempt are not contested by Third Parties or Defendants. However, Defendants and Third Parties do dispute whether a violation occurred, their knowledge of such a violation, and whether harm was suffered by the Plaintiff.

Defendants and Third Parties argue that although the ownership of the business records and assets has been transferred, the actual business records and assets have still been preserved and maintained.   That point, however, goes to the issue of harm, and not to the issue of the violation itself. The Court's permanent injunction order clearly enjoined the sale or conveyance of the infringing assets.   Because Defendants and Third Parties have conceded that a conveyance of all of Tattoo Art's assets occurred on October 15, 2011 – including the computers which housed digital files of the Plaintiff's artwork – this Court finds that a violation of the Court's decrees has been established.   See Tr. 35-37, 53-54, 74, 78-79.   The Court's permanent injunction specifically prohibits the Defendants from "selling" the infringing assets.   ECF No. 77 at 75.   Thus, the foreclosure sale which transferred all of Tattoo Art's assets to

10

TatStore, LLC, and which occurred after both Defendants and Third Parties had knowledge of the Court's injunction, is a clear violation of the permanent injunction order.[3] Additionally, Defendants were under a court-ordered obligation to "maintain and preserve the original client files" and business records. ECF No. 66. The Court cannot accept Defendants claim that they have met this obligation when they have transferred control and possession of the records to an entirely separate entity. Defendants were perfectly free to return to this Court to request a modification of the injunction if there was a business necessity or other reason, but they failed to make such a request or to approach Plaintiff about making such a joint request. Thus, the Court finds that Defendants and Third Parties have also violated the Court's May 18, 2011 Order.

Now that a violation has been established, the Court must next look to the issue of whether Plaintiff suffered any harm as a result of Defendants' and Third Parties' contempt. Plaintiff acknowledges that any resulting harm is not quantifiable, but

---

[3] Furthermore, evidence was offered during the June 7, 2012, hearing which established that Mr. Knapp and Mr. Pehrson have made (and continue to make) efforts to again sell the assets of TatStore, LLC to prospective buyers. Tr. at 38:14-17; 86:3-7. Though this does not appear to be the primary basis for Plaintiff's violation argument, this evidence also appears to reflect an effort to further violate the Court's permanent injunction order prohibiting the "sale" of any infringing assets.

that the Defendants' willful infringement indicates that a more specified harm could be forthcoming, and thus the Motion to Show Cause was filed as an effort to forestall that harm. However, because this is an action for contempt of court, not only the Plaintiff but also the judicial system suffers harm as a result of non-compliance. See Omega World Travel, Inc. v. Omega Travel, Inc., 710 F. Supp. 169, 171-172 (E.D. Va. 1989) (acknowledging that there are two discrete harms in contempt cases).

This Court has previously observed that throughout this matter Defendant's behavior has fallen "closer to the willful end of the spectrum than the innocent end." Final Order and Judgment, ECF No. 84 at 14. Defendants have made false assurances in the past, continued to market infringing stencils even after Plaintiff terminated the agreement, and continued to do so throughout the initial lawsuit, mediation, and even the pendency of the trial itself.[4] This recent violation of the

---

[4]   The Court notes that at the Show Cause hearing on the Motion for Contempt, Mr. Knapp admitted to destroying all of the infringing stencils by throwing them out in a dumpster.  Tr. at 57-58.  Mr. Knapp made clear he threw out these stencils *after* the Court issued its Summary Judgment Opinion finding infringement but *before* the Court issued its Findings which ordered the Defendants to turn all infringing material over to Plaintiffs.  Id.  However, Mr. Knapp could not identify for the Court a specific month or day on which this destruction occurred.  Id.  Though it is unclear whether Mr. Knapp's actions were done in bad faith, the mere fact that this was not made

Court's Orders demonstrates yet again that the only thing that effectively deters Defendants is a direct Court Order, and sometimes not even that is effective. See Christian Science Bd. Of Directors of First Church of Christ, Scientist v. Robinson, 123 F. Supp. 2d 965, 978 (W.D.N.C. 2000) (finding that harm was demonstrated through "the caustic nature of the pleadings filed by Defendants and the history of contentious conduct" and that the violations would likely continue without a "finding of civil contempt"); Omega Real Travel, Inc., 710 F. Supp. at 171 (continuous contempt of a court order is sufficient to find harm) aff'd., 905 F.2d 1530 (4th Cir. 1990). Because Plaintiff has demonstrated the first three elements by clear and convincing evidence, and because the blatant contempt for this Court's decrees is a harm against the system, the Court **FINDS** Defendants in contempt of this Court's permanent injunction order, and further **FINDS** Defendants also in violation of the Court's May 18, 2011 Order. While the Third parties have not previously demonstrated the same behavior as Defendants, the evidence nonetheless reflects that they are also in contempt of both the Court's permanent injunction and May 18, 2011 Orders, and the Court so **FINDS**.

---

known to the Court or to Plaintiff until over a year later is troubling.

### C. **Display of Infringing Material on the TatStore Website**

Next, Plaintiff argues that Defendants and Third Parties have further violated the Court's permanent injunction order by continuing to display the infringing designs on the TatStore.com website. Specifically, Plaintiff alleges that: 1) TatStore's website, through a "cloaked"[5] portion of the site, still claims that Plaintiff's copyrighted works are for sale and customers can still access images of Plaintiff's work; and 2) Tatstore's website currently displays a video file[6] that contains images of Plaintiff's work. ECF No. 113 at 4-5. However, Plaintiff has the burden by clear and convincing evidence to establish such violations, and very little evidence or testimony was offered at the hearing on this Motion to support these contentions.

For the video file violation, Plaintiff provided the Court with a screenshot depicting the web page with the video window displayed and showing the web address where this video was located.[7] ECF No. 113, Ex. 4. However, for the second alleged violation, Plaintiff could not provide the Court with

---

[5] "Cloaking" refers to a limited access page. Although it is a public page, it is only accessible after subscription to a membership program.

[6] This video allegedly offers a "how to" tutorial for purchasers of the airbrush temporary tattoo system banners sold by Defendants. ECF No. 124 at 5. This particular video contains some images of Plaintiff's designs as part of the "how to" tutorial. Id.

[7] This page is said to have been accessed by the attorney for Plaintiff on April 6, 2012.

screenshots of the supposedly infringing images and in fact acknowledged that it *had not actually seen* any infringing images on the website; instead Plaintiff only suspected the existence of the infringing images based upon language in an outdated blog entry referencing a "cloaked" portion of TatStore's website. Tr. at 31; see also, ECF No. 113, Ex. 3 at 7 (blog entry). However, Defendants admitted that there were in fact digital images of stencils created from the infringing designs present on the website, but that they had been rendered "invisible" and were not viewable by the public. Tr. at 61:3-11. In support of this contention, Defendants and Third Parties provided an affidavit by their web director, Benjamin Wolfe, as well as the testimony of both Knapp and Pehrson. Wolfe's affidavit stated that he was asked to remove the images from public view and render them inaccessible, and that he was further informed that the same should be done to the video. ECF 126. According to Mr. Wolfe, the homepage of the TatStore website did not have a link to the video. Id. Instead, the video was accessible only by directly typing the html link into the address bar, or via a "cached"[8] Google search that is restricted to the TatStore website. Id.

---

[8] To the Court's frustration, during the hearing, Plaintiff did not offer any qualified witnesses to explain the meaning of the various computer science terms and how different actions such as "caching", "cloaking," or rendering "invisible," work. "Cache"

After the hearing, as part of Plaintiff's supplemental position paper to the Court, Plaintiff attached an affidavit from Russell Lambert, an experienced IT and computer science professional.   ECF No. 133, Ex. 1.   Mr. Lambert's affidavit further explains the differences between a "website" and a "webserver" and raises some doubt as to Defendants and Third Parties argument that the video file was not accessible to the public.   Id. at ¶ 4.   Mr. Lambert's affidavit further calls into question Mr. Wolfe's statements regarding the server log records and the "cloaked" portion of the website.   Id. at ¶¶ 7-10.   However, though Mr. Lambert's affidavit was helpful, and may have even been more helpful if his testimony had been offered at the hearing, many unanswered questions still remain. For example, it remains unclear what effect, if any, "caching" may have had on the accessibility of these images. Additionally, it is unclear what infringing content, if any, was accessible to MVP members through the "cloaked" page.   Last, as the allegedly infringing video was never produced or played for

---

is defined in Merriam-Webster Dictionary as "a computer memory with very short access time used for storage of frequently or recently used instructions or data – also called *cache memory.*" See, Merriam-Webster Online, http://www.merriam-webster.com/dictionary/cache.   Consistent with this definition, during the hearing Mr. Knapp described his understanding of "cache" to be that a computer may often store and display an outdated version of certain websites; thus, one must "refresh" their computer in order to see the updated version of the site. Tr. at 70-71.

the Court, it is unclear what infringing images may or may not have been displayed in that video file. Thus, it does not appear the evidence before the Court is sufficient to establish the alleged violations.

Furthermore, Plaintiff must establish by clear and convincing evidence that the "movant suffered harm as a result" of any violation. Ashcroft, 218 F.3d at 301. Defendants and Third Parties argue that Plaintiff has presented no quantifiable evidence about infringing sales or even the number of customers who were able to view the infringing images. However, this information is not always necessary, for in some cases, harm may be inferred. In trademark infringement suits, injury results when there is a likelihood of a number of purchasers being misled or "simply confused" as to the source of the goods. See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology, 794 F.2d 38, 43 (2nd Cir. 1986) (citing Joseph Scott Co. v. Scott Swimming Pools, Inc., 764 F.2d 62, 66 (2nd Cir. 1985)); see also Omega World Travel, Inc. v. Omega Travel, Inc., 710 F. Supp. 169, 171-172 (E.D. Va. 1989) (finding that confusion caused by Yellow Page postings constituted harm, even when the movant was unable to show quantification of harm or loss of business). However, unlike the above cases, here there is no evidence that anyone had seen the images or video, thus

making it unlikely that any individual was confused as to the source of the goods.

In this case, however, even if harm were inferred, Plaintiff cannot meet the standard to establish civil contempt. Clear and convincing evidence has not been presented that Defendants and Third Parties had knowledge of the violation. The undisputed testimony at the hearing was that Defendants and Third Parties believed that all infringing material was made nonpublic, and could not be accessed by anyone other than their web developer. Tr. 70 - 71, 79. Furthermore, Plaintiff did not prove by clear and convincing evidence that a violation even occurred. The only evidence offered by Plaintiff was a screenshot of the video and a single sentence in a blog entry from July 2008 referencing the infringing work. ECF No. 113, Ex. 1; Tr. 8. Defendant, to rebut this evidence, produced server logs demonstrating that no computer had accessed the web video outside of the parties and the internet provider, corroborating the testimony that the images had been made nonpublic. ECF No. 126, Ex. 1 & 2. The Court acknowledges that Plaintiff does not have access to Defendant's web server and server logs and is unable to verify the accessibility of these images. The Court also notes that Plaintiff's recently submitted affidavit from Mr. Lambert potentially calls into question the credibility of the server logs Defendants and Third

Parties provided to the Court.    ECF No. 133 at ¶¶ 7-11. However, Plaintiff could have presented testimony from Mr. Lambert during the hearing or could have subpoenaed Defendants' web developer, Mr. Wolfe, but chose not to.  Plaintiff has the burden to establish these alleged violations by clear and convincing evidence and that burden was simply not met in this case.

Furthermore, civil contempt is only an appropriate sanction when the Court Order is "specific in detail and unequivocal in command."   In re General Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995).  Although the Court's permanent injunction in this case sets forth clear parameters, it does not specifically address whether maintaining "invisible" images on a webpage constitutes a violation of the Court Order.  Therefore, because Plaintiff has not put forth clear and convincing evidence of a violation or "knowledge of a violation" by the Defendants and Third Parties on these issues, and because of potential ambiguity in the Court's Order, neither Defendant nor Third Parties will be held in civil contempt for the purported display of infringing images.

## IV.   CONCLUSION

Having carefully considered all claims for contempt, and having examined the four factors necessary for a finding of civil contempt, this Court **FINDS** that Defendants and Third

Parties are in violation of this Court's June 29, 2011 permanent injunction order as well as the Court's May 18, 2011 order. Defendants and Third Parties violated the above orders by improperly conveying all assets of Tat International to Third Parties John Pehrson and Tatstore.  Upon a finding of contempt, the Court has broad discretion to fashion an appropriate remedy to coerce compliance with the terms of the permanent injunction. United States v. Darwin Constr. Co., 873 F.2d 750, 756 (4th Cir. 1989).  Accordingly, as a reminder that this Court's permanent injunction, issued June 29, 2011 and incorporated into the Court's August 23, 2011 Final Order and Judgment, enjoins Third Parties John Pehrson and Tatstore, LLC, the entity that now owns and controls Tattoo Art's assets, the Court is attaching to this Opinion the two above referenced Orders, which comprise the injunction in this case.  Additionally, Defendant and Third Parties are further **ORDERED** to: (1) Maintain and preserve the business records of Tat International, LLC until final resolution of all litigation in this matter or further Court Order; (2) Remove all J.D. Crowe derived images (including any images currently blocked from public access) from any and all computers in Defendants' or Third Parties' custody, possession or control, including but not limited to the web server, and place those images on a disk, a copy of which should be provided to both Plaintiff's counsel and Defendants' counsel within 14

days of entry of this Order; (3) Submit an affidavit from Mr. Knapp regarding the status and disposition of all products derived from Plaintiff's artwork; and (4) Allow one designated representative of Plaintiff to monitor Tatstore's cloaked MVP room on its website, from now until the conclusion of the appeal pending before the Fourth Circuit.[9]

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

                                    _____
                                        /s/ [signature]
                                          Mark S. Davis
                                    United States District Judge

September __7__, 2012
Norfolk, Virginia

---

[9] Plaintiff also requested attorney's fees in the initial Motion to Show Cause. However, that request was not included in the position paper, which presented Plaintiff's position on appropriate remedies, so Plaintiff is assumed to have abandoned that request.